UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE:

CYNTHIA MAYER,                                Case No. 09-60536
fka CYNTHIA MAYER KRIEGER,              Chapter 7
                                                        Hon. Walter Shapero

       Debtor,
_____/

CYNTHIA MAYER,

       Plaintiff and Counter-Defendant,

v.                                                       Adv. Pro. No. 10-05428

GIARMARCO, MULLINS & HORTON, P.C.,
GILBERT GUGNI, and
ARNOLD GARBER,

       Defendants and Counter-Plaintiffs.
_____/

**POST-REMAND OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

A divorce action was arbitrated and the state court entered judgment in which the arbitrator and the wife's attorneys were granted a lien on the proceeds of an IRA account that the wife was required to liquidate and pay their outstanding fees. The wife thereafter filed a Chapter 7 bankruptcy case and therein filed this adversary proceeding against the attorney and the arbitrator seeking to avoid that lien. Defendants moved for summary judgment on the grounds that the state court judgment created a constructive trust over such IRA account funds,

1

precluding the avoidance action. This Court granted the Defendants' motion. On appeal, the District Court vacated and remanded for further proceedings.

BACKGROUND

Gilbert Gugni, an attorney with the law firm of Giarmarco, Mullins & Horton, P.C., represented the debtor Cynthia Mayer ("Plaintiff") in divorce proceedings commenced in the Oakland County Circuit Court (the "State Court") in 2008. Arnold Garber served as arbitrator in those proceedings, pursuant to the agreement of the two spouses. Mr. Gugni, his law firm Giarmarco, Mullins & Horton, P.C., and Mr. Garber are collectively identified as "Defendants." Mr. Gugni and the law firm are collectively identified as "the Attorney" and Mr. Garber as "the Arbitrator." The contentious divorce was eventually resolved and Plaintiff and her then-husband consented to the State Court issuing an order on June 4, 2009 essentially adopting the arbitration award and giving it the force of law (the "Divorce Judgment"). The salient three paragraphs of the State Court's Divorce Judgment relating to payment of Defendants' respective fees state:

> 76. IT IS FURTHER ORDERED AND ADJUDICATED that Plaintiff, CYNTHIA KRIEGER, shall forthwith liquidate and turn over Fifty Thousand ($50,000.00) Dollars of her H&R Block IRA accounts ["IRA Proceeds"] (previously awarded to her pursuant to Agreement to Withdraw Retirement Funds signed by the parties effective December 23, 2008) to her attorney, Gilbert Gugni, who shall disburse the funds as follows:
>
> A. The balance, if any, of fees owed by Plaintiff to Arbitrator Arnold Garber, which shall be first paid.
>
> B. The balance, if any, of the fees owed by Plaintiff to her attorney, Giarmarco, Mullins & Horton, P.C., shall then be paid.
>
> C. The estimated funds necessary to pay any tax liabilities shall then be paid.
>
> D. The balance of the funds, if any, shall be paid to Plaintiff.

2

> 96. IT IS FURTHER ORDERED AND ADJUDICATED that each party shall pay the balance of his/her respective attorney fees forthwith and each attorney shall retain a lien on his client's share of the marital assets to insure payment of his fee.
>
> 97. IT IS FURTHER ORDERED AND ADJUDICATED that the parties shall each pay the balance of the fees owed to Arbitrator Arnold Garber. The Arbitrator shall retain a lien on each party's share of the marital assets to insure payment of his fees.

The $50,000.00 represented less than half of the apparent total value of that IRA account, the rest presumably being retained by Plaintiff. Plaintiff did not appeal either the arbitration order or the Divorce Judgment. Plaintiff paid approximately $15,000 of the fees, but then filed her Chapter 7 bankruptcy twenty-six days after the entry of that Divorce Judgment, thereafter failing or refusing to comply with these provisions relating to the turnover of the IRA Proceeds.

Plaintiff filed this adversary proceeding under 11 U.S.C. § 547(b) to avoid the liens referenced in the Divorce Judgment. She argues that the IRA Proceeds were her own personal property despite the purported lien, and that as such, were a part of her bankruptcy estate, rendering the lien avoidable. In a counter-complaint, Defendants sought a determination that Paragraph 76 impressed a constructive trust on the IRA Proceeds, excluding such from Plaintiff's bankruptcy estate, thus destroying a necessary element of Plaintiff's avoidance action. Plaintiff and Defendants filed cross motions for summary judgment on those respective theories.

This Court granted Defendants' motion, finding a constructive trust, which necessarily defeated Plaintiff's avoidance action. That opinion relied in part on In re Combs, 435 B.R. 467 (Bankr. E.D. Mich. 2010) (because divorce judgment granted wife an interest in husband's pension payments, husband held them in constructive trust for her benefit). Plaintiff appealed to the District Court, which vacated this Court's ruling, opining:

3

> The Court agrees with [Plaintiff] that (1) *In re Combs* does not fully resolve the issues in the present case, and (2) the Bankruptcy Court erred in holding to the contrary. [Defendants] cannot rely upon the first part of that analysis here—the laws and cases upon which that conclusion rested were quite clearly limited to the context of, and dependent upon the law of Michigan regarding, the division of marital property between spouses. A necessary element of that analysis—namely, when pension benefits that were accrued during a marriage are distributed in a divorce judgment, Michigan law grants the soon-to-be-former spouse an equitable interest in his or her portion of those benefits—is not applicable here with respect to [Defendants]. Nevertheless, if [Defendants] can establish some other basis by which the judgment of divorce granted them an equitable interest in the IRA proceeds, then the second part of the *In re Combs* analysis (namely, that a pre-petition court-granted equitable interest in an asset can be the basis for the imposition of a constructive trust with respect to that asset) would come into play… For this reason, the Court will, and does, vacate the order of the Bankruptcy Court and remand the case for its consideration as to whether there was any other basis—aside from the laws that are specific to the distribution of marital property between spouses—for finding that [Defendants] had an equitable interest in [Plaintiff's] IRA assets.

In re Mayer, 451 B.R. 702, 716 (E.D. Mich. 2011) (footnote omitted). The District Court stated that Plaintiff indisputably satisfied the criteria to avoid the transfer, except for the issue of whether the IRA Proceeds were the interest of the debtor in property. Id. at 710. The District Court remanded to this Court for further consideration as noted. This Court held further hearings and the parties stipulated to the record for evidentiary purposes, to wit: "the docket, the pleadings, testimony at the evidentiary hearing, arguments of counsel and all other matters of which the Court takes judicial notice[.]" Stipulation Pl. & Defs. to Record (Dkt. 73).

The mandate of the District Court, in its own words, was for this Court to find if there is any other basis "aside from the laws that are specific to the distribution of marital property between spouses" for Defendants to have an equitable interest in the subject IRA Proceeds, the implication being that if such interest is found, it is an alternate basis for the existence of a constructive trust, thus permitting summary judgment in favor of Defendants. On remand and

4

despite the potential existence of other issues possibly relevant to the disposition on other grounds, the parties limited their arguments to the issue as so framed, and this Court limits its analysis accordingly. The dispositive question, therefore, is whether Defendants hold any equitable interest that gives rise to a constructive trust in the IRA Proceeds, other than on the constructive trust theory rejected by the District Court. This Court concludes there is such.

SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Federal Rule of Bankruptcy Procedure 7056. Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. (emphasis original). "There is no genuine issue of material fact when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Williams v. Leatherwood, 258 F. App'x 817, 820 (6th Cir. 2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, (1986)). "The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Grp. v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Anderson, 477 U.S. at 248).

DISCUSSION

Preliminarily, it should be noted that the law is clear that property that a debtor holds in a prepetition trust is neither property of the debtor nor subject to a § 547(b) avoidance action. See Begier v. IRS, 496 U.S. 53, 59 (1990). The Bankruptcy Code does not define "property of the debtor" but that phrase should be interpreted to mean property that would have been part of the bankruptcy estate had it not been for the transfer in question. Id. at 58. "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). Property in which a debtor, as of the date of filing, holds a legal interest but not an equitable interest does not become part of the bankruptcy estate. § 541(d); Begier, 496 U.S. at 59. The Sixth Circuit has held that this reasoning applies with equal force to express and to constructive trusts. In re Morris, 260 F.3d 654, 670 (6th Cir. 2001).

Trusts, including constructive trusts, emanate from state law. See Barnhill v. Johnson, 503 U.S. 393, 398 (1992) (citations omitted); see also In re Hines, 356 B.R. 786 (B.A.P. 6th Cir. 2006) (determined Ohio law impressed property with a constructive trust). Under applicable Michigan law, constructive trusts are products of equity arise by operation of law. Vuljaj v. Camaj, 2009 WL 3163125, *2 (Mich. Ct. App. 2009). Constructive trusts are remedial in nature and prevent unjust enrichment. In re Barnes, 264 B.R. 415, 430 (Bankr. E.D. Mich. 2001). A constructive trust may be imposed when property has been obtained under "circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property." Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch., 443 Mich. 176, 188 (1993). "A constructive trust need not arise because the property was wrongfully acquired, it may arise out of unconscionability and unjust enrichment." Grasman v. Jelsema, 70 Mich. Ct. App. 745, 752

6

(1976). In decreeing a constructive trust, Michigan courts of equity are not bound by an unyielding formula and may form any relief as the equity of the circumstances dictates. Olitkowski v. St. Casimer's Sav. & Loan Ass'n, 4 N.W.2d 664, 667 (Mich. 1942); Union Guardian Trust Co. v. Emery, 290 N.W. 841, 846 (Mich. 1940). As this Court noted in its initial opinion, a court need not use the actual words "constructive trust." McCafferty v. McCafferty (In re McCafferty), 96 F.3d 192, 198-99 (6th Cir. 1996). It is for the party seeking to establish a constructive trust to prove by a preponderance of the evidence. Mackenzie v. Fritzinger, 370 Mich. 284, 292 (1963).

A

The first theory asserted by Defendants is that there exists a constructive trust arising under the principles of equity, restitution, unjust enrichment, and the State Court's inherent authority as a court of equity. Defendants argue in essence that this equitable basis produces an equitable lien and/or interest apart and distinguishable from the specific constructive trust interest argued to, and rejected by, the District Court. "Divorce actions in Michigan are still considered a type of equity suit even though Michigan no longer has separate equity courts." Sparks v. Sparks, 440 Mich. 141, 150 (1992) (footnote omitted). Michigan's divorce courts "shall be conducted in the same manner as other suits in courts of equity; and the court shall have the power to award issues, to decree costs, and to enforce its decrees, as in other cases." Mich. Comp. Laws § 552.12. Those courts, through their judgments, can create constructive trusts with regard to the parties to the divorce, i.e., the divorcing spouses. See Divorce Judgment ¶ 109 (imposing constructive trust, as relates to the two spouses, in the event one fails to satisfy

7

obligations); see also In re Combs, 435 B.R. 467.  This theory is generally explained in Restatement (Third) of Restitution & Unjust Enrichment § 56 (2011) stating in relevant part:

> (1) If a defendant is unjustly enriched by a transaction in which
>
> > (a) the claimant's assets or services are applied to enhance or preserve the value of particular property to which the defendant has legal title, or more generally
> >
> > (b) the connection between unjust enrichment and the defendant's ownership of particular property makes it equitable that the claimant have recourse to that property for the satisfaction of the defendant's liability in restitution,
>
> the claimant may be granted an equitable lien on the property in question.

Comment b to that section further explains:

> Constructive trust and equitable lien are related remedies for unjust enrichment. Both are equitable in origin and function; both give the claimant rights in specific property to which the defendant holds legal title; both are available only if the claimant can demonstrate a transactional nexus between the unjust enrichment that is the basis of liability and the specific property in which the claimant asserts remedial rights.  The remedies differ in the scope of the rights afforded and in the nature of the connection (in other words, the "tracing requirement") that must be shown between the defendant's liability in restitution and the property in question.

A court order to convey property can give rise to a constructive trust if applicable state law deems that conveyance to fall within the court's equitable jurisdiction.  See In re Morris, 260 F.3d at 667-68 (finding that Ohio law imposes a constructive trust with regard to an order to convey real property, placing the trust corpus outside the bankruptcy estate).  The State Court was a court of equity and, accordingly, had the authority to fashion a flexible equitable remedy, and did in fact do so.  The State Court, in effectuating the arbitration order, had jurisdiction to award relief that could not be granted in an ordinary civil action.  Mich. Comp. Laws

8

§ 600.5025.[1]  It had the power to decree costs and to accordingly enforce such decrees.  Mich. Comp. Laws § 552.12.  Additionally,

> In every action brought, either for a divorce or for a separation, the court may require either party to pay alimony for the suitable maintenance of the adverse party, to pay such sums as shall be deemed proper and necessary to conserve any real or personal property owned by the parties or either of them, and *to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency*.  It may award costs against either party and award execution for the same, or *it may direct such costs to be paid out of any property sequestered*, or in the power of the court, or in the hands of a receiver.

Mich. Comp. Laws § 552.13(1) (emphasis added).  This statute, in order to secure payment of attorney's fees, grants a divorce court the authority to impose a judicial lien on property awarded.  Tyrrell v. Tyrrell, 107 Mich. Ct. App. 435, 438 (1981).

In a divorce case, the court "may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money."  Mich. Comp. Laws Ann. § 552.19.  "[W]hen a divorce judgment purports to transfer a separate ownership interest in a pension from one spouse to the other, that ownership interest transfers when the divorce judgment is entered."  In re Combs, 435 B.R. at 472.  This Court is persuaded that the State Court treated the IRA Proceeds as marital property, i.e. the property was within the State Court's authority and could be allocated as it deemed appropriate in light of relevant equitable considerations.  Paragraphs 95 and 96 of the Divorce Judgment, as previously quoted, dictate that the Attorney and the

---

[1] That statute was in effect during the relevant time period, but has since been repealed by P.A.2012, No. 370, § 1, effective July 1, 2013.

9

Arbitrator retain a lien on each party's share of the marital assets. Plaintiff's arbitration brief essentially conceded that the IRA Proceeds are marital assets, stating:

> It should be noted that both parties borrowed from their respective retirement accounts to pay down marital debt… The parties also recently agreed to withdraw additional retirement funds from their respective accounts in the sum of $50,000.00 to be used for attorney fees and other personal expenses… This award is considered an advance against assets received in the ultimate division of property and therefore, the balances set forth above will be less by the time of [the arbitration]. The amounts remaining in the retirement accounts should be divided equally with no deduction for any deficiency attributable to the marital home.

Defs. Evid. Hearing Brief. (Dkt. 65,) Exh. E. at 8. That same brief, under the heading "Description of Marital Assets" immediately followed by a statement of "The assets that must be addressed in this arbitration" listed, among other referred-to assets of the parties, the IRA account of which the subject IRA Proceeds are a part. Id. at 6-7. It also went on to further state in reference thereto that all of the listed retirement accounts of both parties "are the primary assets to be divided." Id. at 7. Within the framework of Michigan divorce law, it is thus evident that the State Court (a) had the authority to require Plaintiff to pay the legal fees and costs for the ongoing proceedings and the authority to direct that those costs be paid out of the IRA Proceeds that were treated as marital property; and (b) in fact exercised that authority by way of its Divorce Judgment, essentially adopting the Arbitrator's report.

Upon the filing of the divorce, the IRA proceeds became part of the marital estate and within the jurisdiction of the State Court. See Skelly v. Skelly, 286 Mich. Ct. App. 578, 583 (2009). The Divorce Judgment, which decreed that Plaintiff would retain such IRA Proceeds, was a proximate result of Defendants' services. The State Court, given its inherent role in overseeing and otherwise regulating the conduct the Arbitrator and the Attorney, had the

10

equitable authority to direct for costs to be paid accordingly. See <u>Kysor Indus. Corp. v. D.M. Liquidating Co.</u>, 11 Mich. Ct. App. 438, 446 (1968).

This Court rejects Plaintiff's argument that the Divorce Judgment did not "recover" anything for her, but rather only allowed her to keep what she already owned. It is to be noted that the credible testimony of the Arbitrator indicated that he issued the arbitration order in a manner that divided the IRA Proceeds, as a part of the marital estate, to account for the payment of said legal fees from Plaintiff's IRA Proceeds. He indicated that he recognized that Plaintiff's ex-husband bore too much of the relative burden for the payment of such fees, and accordingly awarded the ex-husband's un-quantified interest in the IRA Proceeds to Plaintiff alone, with the understanding that Plaintiff would be obligated to pay those fees from those proceeds. The services of Defendants, one as an attorney and one as an arbitrator, were necessary to the disposition of the contentious divorce proceeding. The Divorce Judgment provided for the awarding and/or retention of the marital property involved and the parties' mutual obligations thereunder. Defendants' labor was necessary to the disposition of this matter and the settlement was a direct result of it.

The property either retained by or awarded to Plaintiff is traceable to, or identifiable with, the outcome of that divorce case, and in this matter, the specific property interest as the source of payment of the amounts owed by Plaintiff to Defendants, was the identified Proceeds. This Court thus interprets the State Court's Divorce Judgment to have also afforded a basis for an equitable interest in, and thus afforded a basis for a constructive trust over the IRA Proceeds to ensure that such fees would be paid and to prevent Plaintiff from being unjustly enriched by benefitting from Defendants' services without having to pay for them.

11

Two cases generally support this Court's findings, both involving divorce and constructive trusts under Michigan law. In Chavarria v. Metro. Life Ins. Co., 2009 WL 1856542 (E.D. Mich. 2009) (Zatkoff, J.), a divorce judgment required the husband to maintain the wife as the beneficiary of his life insurance policy. The husband did not comply with that explicit court order, and died leaving a third-party as the beneficiary. In resolving the dispute between the wife and the third-party, the Court imposed a constructive trust, opining:

> the [husband's] failure to perform his duties under that contract entitle [the wife] to an equitable solution. A constructive trust would afford [the wife] the benefit of the bargained-for divorce agreement and rectify the injustice that would result if she were deprived of such benefit because [the husband] violated the Judgment of Divorce.

Id. at *4. In Morris v. Metro. Life Ins. Co., 751 F. Supp. 2d 955 (E.D. Mich. 2010) (Lawson, J.), the husband listed his first-wife as the beneficiary of his life insurance policy. When they divorced, the divorce judgment explicitly stated that both parties waived any such rights to the other's life insurance policies. The husband later re-married to his second-wife, but died shortly thereafter without having changed the beneficiary designation. The Court held that ERISA preempted that divorce judgment provision, meaning that the first-wife was entitled to the life insurance distribution, pursuant to the unaltered beneficiary designation. However, in order to prevent the first-wife's unjust enrichment, the Court additionally required the litigants to develop a factual and legal record regarding the equities and whether a constructive trust existed for the benefit of the second-wife. While both such cases primarily deal with the distribution of marital property between spouses, both also illustrate the equitable nature of the constructive trust under Michigan law and how such can be relevant or applied to situations where a non-party beneficiary is involved. Furthermore, it is not even clear that Defendants, given their capacities

12

and relationship to the divorce case and its parties, should even be considered non-parties to the divorce case, for purposes of this opinion.

Absent any of the specific provisions in the Divorce Judgment relating to the payment of the fees due out of the IRA, or the specific lien retention provisions with regard to that specific property, this Court concludes the indicated legal principles afford the basis for a conclusion that Defendants held an equitable interest in the IRA Proceeds, such as can give rise to a constructive trust. It should be also noted that the rights or interests of other creditors are not adversely affected because Plaintiff exempted the subject IRA accounts, the Trustee did not object to that exemption, and but for the present pending adversary proceeding, which essentially only involves this IRA account, the bankruptcy estate is ready to be closed.

B

As an alternative theory, the Attorney argues that there exists another equitable interest that affords a basis for imposing a constructive trust on the IRA Proceeds, i.e. that (even absent the provisions of the Divorce Judgment) the Attorney holds a charging lien on the IRA Proceeds for the services rendered to Plaintiff.[2] The charging lien was not the explicit subject of Plaintiff's original complaint to avoid the Divorce Judgment's reference to a "lien" on the IRA Proceeds. Charging liens are one of two types of attorneys' liens under Michigan law (the other

---

[2] The Arbitrator does not and cannot argue that he too is entitled to a charging lien. Under Michigan Law, the charging lien arises by operation of law for the benefit of an attorney, but does not extend to an arbitrator. Local 58, Int'l Bhd. of Elec. Workers, AFL-CIO v. G.T. Einstein Elec., Inc., 932 F. Supp. 974, 978-79 (E.D. Mich. 1996) (arbitrator "presents no precedent, however, for extending the common law practice of recognizing attorney's liens to recognizing 'arbitrator's liens.'").

13

being a retaining lien, which is inapplicable here). Michigan Law and Practice 2d, Attorneys and Counselors § 161 (2012). It arises by operation of law, and notice to the judgment debtor is not a requisite of the lien. Shank v. Lippman, 227 N.W. 710, 711 (Mich. 1929). "In this State, an attorney has a [charging] lien upon a judgment obtained through his efforts, for services and disbursements in the particular case." Id.

> This equitable principle is derived from the civil law. It is considered reasonable and proper that an attorney, by whose labor and at whose expense a judgment has been obtained for his client, should have an interest in that judgment which the law will regard and protect. Lord Kenyon declared "that the convenience, good sense, and justice of the thing required it." . . . It was doubtless recognized upon the ground of justice that the attorney had contributed by his labor and skill to the recovery of the judgment, and the court, wishing to protect its own officers, exercised its power to that end; or, as Lord Kenyon puts it: "The party should not run away with the fruits of the cause without satisfying the legal demands of his attorney, by whose industry, and, in many instances, at whose expense, those fruits are obtained."

Canney v. Canney, 91 N.W. 620, 622 (Mich. 1902) (quoting Jones on Liens, at pg. 102); see Kasben v. Dery, 174 Fed. Appx. 955, 961 (6th Cir. 2006) (recognizing that charging liens can stem from Michigan divorce decrees).

As noted, this Court rejects Plaintiff's argument that the Divorce Judgment did not "recover" anything for her, which she argues would preclude the attachment of a charging lien. "The special or charging lien is an equitable right to have the fees and costs due for services secured out of the *judgment or recovery* in a particular suit. The attorneys' charging lien creates a lien on *a judgment, settlement, or other money recovered* as a result of the attorney's services." Laborers Pension Trust Fund-Detroit & Vicinity v. Interior Exterior Specialists Co., 824 F. Supp. 2d 764, 774 (E.D. Mich. 2011) (emphasis added) (quoting George v. Sandor M. Gelman, P.C., 201 Mich. Ct. App. 474, 477 (1993)) (internal citations omitted). The charging lien attaches to

14

"the judgment or fund resulting" from the attorney's services. Wipfler v. Warren, 163 Mich. 189, 194 (1910). In the end, the Divorce Judgment spells out the result, which was achieved by the efforts and services rendered by the attorneys and the parties. In a case where a plaintiff, for instance, sues for and recovers damages, the "recovery" for an attorney's charging lien is more obvious. A "recovery" in a divorce case, for such purposes, can be reasonably seen as the final outcome expressed in the whole of the judgment itself, which may include the transfer or retention of property of the marital estate to either party, regardless of its status at the inception of the divorce proceedings. Such an ultimate disposition (i.e. the "recovery") thus can be considered the product of a divorce judgment and can be subject to a charging lien. The resulting lien on the IRA Proceeds was, in whole or in sufficient part, a product of and traceable to the work of the Attorney. For purposes of this situation at least the divorce litigation and its resulting judgment should be considered as a whole, not to be parsed or broken down to the individual components of that whole for purposes of trying to speculate or determine whether or to what extent which of all the services performed contributed to what part of the ultimate judgment. Plaintiff's argument would, in effect, involve this Court making its determination based on (a) the extent to which the Attorney's services augmented or improved Plaintiff's award of each particular asset; and (b) whether each particular asset awarded to Plaintiff was previously owned jointly or by either spouse individually. That is both unrealistic, particularly in terms of the nature of divorce litigation of any complexity such as this, and in any event, an inappropriate result, to say nothing of being difficult to prove.

This Court thus is not persuaded by Plaintiff's various arguments against the existence of a charging lien. Plaintiff argues that the equities weigh against a finding of an equitable interest

15

10-05428-wsd    Doc 74    Filed 09/04/13    Entered 09/05/13 08:08:49    Page 15 of 19

or a constructive trust, citing Rubel v. Brimacombe & Schlecte, P.C., 86 B.R. 81 (E.D. Mich. 1988). That case is distinguishable because (a) it dealt with an attorney who impermissibly attempted to enforce a charging lien against realty and foreclose upon it; and (b) it dealt with a context where there was no written agreement for the imposition of the lien. Given the totality of the circumstances presented, and the above-noted principles of equity, restitution, promissory estoppel, and unjust enrichment, this Court deems that the equities weigh in the favor of the Attorney and against Plaintiff.[3]

Plaintiff also quotes Aetna Cas. & Sur. Co. v. Starkey, 116 Mich. Ct. App. 640, 645, (1982), stating:

> An attorney's lien is not an assignment but is a specific encumbrance on a fund or judgment which the client has recovered through the professional services of the attorney. A lien is not a property right in, or right to, the thing itself, but constitutes a charge or security thereon.

This case dealt with the issue of whether a typical contingency fee arrangement, which created a charging lien, violated a statute that voided any agreement for assignment of a right to future auto insurance benefits. That Court held that the contingency fee arrangement did not assign to the attorney any right to the benefits, but rather only encumbered the monetary recovery and gave the attorney a charge thereon for the value of his services. Actually, that is similar to the case at hand, where the Attorney is not claiming the Divorce Judgment granted a legal right to possession of the IRA Proceeds, but rather an equitable interest therein and a resulting constructive trust thereon.

---

[3] While not dispositive, there is an element of equitable estoppel by reason of Plaintiff having consented to the arbitration, consented to the entry of the resulting Divorce Judgment, consented to the lien on her IRA Proceeds, and, then made some payments pursuant thereto.

Plaintiff argues that a charging lien does not attach to property, but rather only to money or funds. She characterized the IRA Proceeds as property and cites George v. Sandor M. Gelman, P.C., 201 Mich. Ct. App. 474 (divorce attorney could obtain charging lien with regard to money recovered but could not, without a court order, impose realty lien on client's condominium that she was granted in the divorce). However, this Court does not view Plaintiff's IRA Proceeds as comparable. The IRA Proceeds, in essence, had the character of money or funds. A "lien" on money or funds acts as a charge on the value thereof, whereas a lien on realty acts as a security interest that attaches to the property. Unlike real estate, the IRA Proceeds have a set dollar value and are easily liquidated. In any event, a charging lien on real estate can be valid if the parties agree to such in writing, if the attorney obtains judgment and follows appropriate enforcement procedures, or if there exist special equitable circumstances. Dinu v. Dinu, 2004 WL 1779060 (Mich. Ct. App. 2004) (discussing George v. Sandor M. Gelman, P.C., 201 Mich. Ct. App. 474). All such factors exist here, which only further reinforces the Attorney's position.

Plaintiff also cites: "Once the existence of an attorney's charging lien is established, it is treated as a lien for all purposes under the Bankruptcy Code. It does not matter whether the lien is characterized as 'legal' or 'equitable.'" In re Simms Constr. Servs. Co., Inc., 311 B.R. 479, 488 (B.A.P. 6th Cir. 2004). That Court used that language in the context of rejecting a trustee's argument that a charging lien is unenforceable in bankruptcy because it is a state court remedy. That same case also stated:

> *Omegas* [16 F.3d 1443 (6th Cir.1994), the case relied upon by the trustee] should not be read to invariably preclude the enforcement of constructive trusts or, for that matter, equitable liens or other types of equitable relief. *See Poss v. Morris (In re Morris)*, 260 F.3d 654 (6th Cir.2001) (bankruptcy court may recognize a

17

constructive trust when applicable state law imposes the constructive trust prior to the filing of the debtor's bankruptcy petition)[.]

Id. at 488. That case arguably reinforces this Court's finding that an attorney's charging lien existed under applicable state law and accordingly established an equitable interest and resulting constructive trust in the IRA Proceeds, essentially independent of the specific lien provisions of the Divorce Judgment.

Plaintiff's reliance on Kysor Indus. Corp., 11 Mich. Ct. App. 438 is also unpersuasive, because that court stated:

> There would thus seem to be no question as to the power of the courts, because of their supervisory control of counsel and because of their equitable powers to deal practically with their own dockets, to order delivery of the property from the possession of the attorney where his interest can be protected (or to protect his interest in the subject matter of litigation where dealing with charging liens, the judicial power being the same though the liens are different).

Id. at 446. That case, which did not deal with bankruptcy law, did not, as Plaintiff appears to contend, hold that charging liens cannot form a constructive trust because it is treated as an ordinary lien (which might dischargeable or subject to an avoidance action). Rather, it held that charging liens are equally as effective and enforceable as a lien. Implicitly, it also stated that charging liens are equitable in nature and derive from the inherent authority of state courts.

Plaintiff also argued that, even if the charging lien existed, it was not effective or enforceable because proper notice was not given. However, the case cited by Plaintiff clearly states that notice relates "to the judgment debtor," which in this case is Plaintiff, against whom the lien was ordered, and not H&R Block, who serviced Plaintiff's IRA account. See In re Simms Constr. Servs. Co., Inc., 311 B.R. at 487 (applying Ohio law). Plaintiff herself consented to the entry of an order that required her to liquidate those funds and was thus necessarily given

18

notice of the lien. In any event, notice to the judgment debtor is not a requisite of the charging lien under Michigan law. <u>Shank</u>, 227 N.W. at 711.

## CONCLUSION

This Court therefore concludes, based on the foregoing, that Defendants have established alternative bases for a conclusion pursuant to the direction of the District Court's remand that, aside from the laws that are specific to the distribution of marital property, Defendants were given equitable interests in the IRA Proceeds. From that, this Court draws the further conclusion (which this Court believes is inherent in the language and purport of the remand) that such equitable interest(s), either separately or together, are sufficient to support the existence of a constructive trust with reference to such, thus eliminating a necessary element of Plaintiff's cause of action. Accordingly, summary judgment for Defendants is granted and Defendants shall present an appropriate order.

.

**Signed on September 04, 2013**

　　　　　　　　　　　　　　　　　　　　/s/ Walter Shapero
　　　　　　　　　　　　　　　　　　**Walter Shapero**
　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**